IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREEN TREE SERVICING, LLC** § | | **PLAINTIFF** |
| § | | |
| **V.** § | | **Civil No. 1:07CV1103-HSO-JMR** |
| § | | |
| **DIANA STEPHENS,** *et al.* § | | **DEFENDANTS** |

### ORDER AND REASONS GRANTING
### PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND DENYING
### PLAINTIFF'S MOTION TO PARTIALLY STRIKE

This cause comes before the Court upon the Motion of Plaintiff Green Tree Servicing, LLC ["Green Tree"], filed December 10, 2007 [11-1], to Compel Arbitration.  Defendants Diana Stephens, Jamie Smith, Charles Smith, and Their Minor Children [collectively, "Defendants"] filed a Response in Opposition [13-1], and Green Tree filed a Reply [16-1].  The Court entered an Order on March 31, 2008 [17-1], directing the parties to file supplemental exhibits.  Green Tree then filed a Supplemental Motion to Compel Arbitration [18-1], and Defendants filed a Response in Opposition [19-1].  Green Tree then filed a Motion to Partially Strike [20-1] Defendants' Response in Opposition to the Supplement.  The Court, having considered the record, the pleadings on file, the briefs and arguments of the parties, and the relevant legal authorities, finds that Defendants should be compelled to arbitrate their claims against Green Tree.  Accordingly, the Court finds that Green Tree's Motion to Compel Arbitration should be granted, and its Motion to Partially Strike should be denied.

I. FACTS AND PROCEDURAL HISTORY

Defendants filed a lawsuit against Green Tree and other parties in the Circuit Court of Harrison County, Mississippi, First Judicial District, on or about May 18, 2007 [the "State Court Action"].  *See* State Ct. Compl., attached as Ex. "1" to Suppl. to Mot.  The State Court Action is styled *Diana Stephens, et al. v. Redman/Gateway/ Advantage Mobile Homes, Inc., et al.*, Civil Action Number A2401-2007-117.

In the State Court Action, Defendants assert claims against Green Tree for: breach of express warranty; breach of implied warranty of habitability; deceptive and/or misleading warranty; bad faith; negligent and/or wanton construction, inspection and repair and remediation; breach of contract; misrepresentation of material facts; deceit; suppression of material facts; negligent failure to warn; Mississippi Code § 75-2-314 breach of implied warranty of fitness for a particular purpose; and rescission and cancellation of sales contract.  *See* State Ct. Compl., attached as Ex. "1" to Suppl. to Mot.  All of these claims relate to the purchase of a mobile home by Defendant Diana Stephens.

Green Tree initiated this case by filing a Complaint on September 24, 2007, seeking to compel arbitration of Defendants' claims against it in the State Court Action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.  In their Complaint, Green Tree also asks the Court to stay this action pursuant to 9 U.S.C. § 3 and the terms of the arbitration agreement pending conclusion of the arbitration, or to dismiss the action in favor of arbitration.  After Defendants were

served with process, Green Tree filed the instant Motion to Compel.

The mobile home in question was financed by a "MISSISSIPPI NOTE, DISCLOSURE AND SECURITY AGREEMENT, AND AGREEMENT TO ARBITRATE" [hereinafter, "Agreement"], which is attached to Green Tree's Motion as Exhibit "2." As indicated by the title of the Agreement, it contains an arbitration provision, which is the basis for the present Motion.

The Agreement defines the terms "I," "me," "myself" or "us" as meaning "all persons who sign this Agreement as borrower or co-borrower, jointly and severally...." The sole borrower listed on this Agreement is Diana L. Stephens, the signatory to the Agreement, who is one of Defendants in this case. The Agreement also defines "you" or "your" as "the Lender indicated below." The Lender identified in the Agreement is GreenPoint Credit of Mississippi, L [sic] [hereinafter "GreenPoint"].

## II.  DISCUSSION

"The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). The arbitration process is strongly favored by federal courts. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir. 1998).

Courts perform a two-step inquiry to determine whether parties should be

compelled to arbitrate a dispute. *See Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, a court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *See Webb*, 89 F.3d at 257-58. The second step involves the determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

>The arbitration provision in this case reads, in relevant part, as follows:
>
>[y]ou and I agree to arbitrate any and all: (1) disputes, torts, counterclaims, or any other matter in question between you and I arising out of, in connection with, or in any way relating to this Agreement ("Claims") (including whether Claim must be arbitrated) and (2) any Claims arising out of, in connection with, or relating to a transaction involving you and one or more third parties who have not signed this Agreement which a third party elects to arbitrate ("Third Party Claims").

*See* Agreement, at p. 5, attached as Ex. 2 to Mot.

**A.    Is There a Valid Agreement to Arbitrate Between the Parties?**

State law contract principles are used to determine if there is a valid agreement to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Webb*, 89 F.3d at 257. Under Mississippi law, "acceptance of a contract as binding upon a party may be shown by his actions, and by any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it," as when the party endorses his assent with a signature. *See Dockins v. Allred,*

4

755 So. 2d 389, 394 (Miss. 1999) (*quoting McInnis v. Southeastern Automatic Sprinkler Co.*, 233 So. 2d 219 (Miss. 1970)).

      1.    <u>Non-Signatories to the Arbitration Provision</u>

In this case, only one party, Defendant Diana Stephens, was a signatory to the Agreement containing the relevant arbitration provision. All other parties to this case are non-signatories.

      a.    Non-Signatory Compelling Signatory to Arbitrate

Despite the strong federal policy in favor of arbitration, and the fact that any doubts about the scope of an agreement are to be resolved in favor of arbitration, the Fifth Circuit has noted that it "will allow a non-signatory to invoke an arbitration agreement only in rare circumstances." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Theories by which a non-signatory may compel a signatory to arbitrate include: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary. *See Hellenic Investment Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517 (5th Cir. 2006).

In this case, the signatory, Defendant Diana Stephens, agreed to arbitrate "any Claims arising out of, in connection with, or relating to a transaction involving you and one or more *third parties who have not signed this Agreement* which a third party elects to arbitrate." *See* Agreement, at p. 5, attached as Ex. "2" to Mot. (emphasis added). "Claims" are defined as "disputes, torts, counterclaims, or any other matter in question between you and I arising out of, in connection with, or in

5

any way relating to this Agreement...." *See id.* Stephens also assented to the assignment provision which provided that GreenPoint could "assign this Agreement to any person or entity." Agreement, at p. 6, attached as Ex. 2 to Mot. In such a case, the Agreement states that all rights granted to GreenPoint under the Agreement would devolve to any assignee. *See id.*

GreenPoint subsequently assigned the Agreement to Plaintiff Green Tree, which assumed all rights and interests in the Agreement, including the arbitration provision. *See* Assignment and Assumption Agreement, attached as Exhibit "3" to Green Tree's Supplemental Motion. Due to the assumption of the Agreement, Green Tree has the right to compel Defendant Diana Stephens, as a signatory, to arbitrate.

    b. Compelling Non-Signatories to Arbitrate

Nothing in the Federal Arbitration Act authorizes a court to compel parties not covered by the agreement to arbitrate their claims. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). However, third-party beneficiaries may be bound to an arbitration provision and compelled to arbitrate. *See JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 600 (5th Cir. 2007). The record is clear that Defendant Stephens, a signatory, intended to make Defendants Jamie and Charles Smith and their minor children third-beneficiaries of the Agreement, and that all Defendants consented to the arrangement. According to their own Complaint in the State Court Action, Stephens

> purchased a 2001 Redman Doublewide mobile home, identified as having Serial 12-01-R95-02371 A/B, from Bud's, located at 1851 Pass Road, Biloxi, MS, for her daughter, JAMIE SMITH and husband, CHARLES SMITH, and their minor children. JAMIE SMITH AND CHARLES SMITH made the monthly payments on the home. The Plaintiffs, JAMIE SMITH and CHARLES SMITH, and their minor children, moved into the home subsequent thereto.

State Ct. Compl., at ¶ 6.

It is apparent that the non-signatory Defendants were intended beneficiaries, rather than remote or incidental beneficiaries, of the Agreement. Green Tree can therefore compel these Defendants to arbitrate their claims. The non-signatory Defendants in this case can also be compelled to arbitrate under a theory of equitable or direct-benefit estoppel. *See Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006); *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). The direct-benefit estoppel doctrine applies when a non-signatory knowingly exploits the agreement containing the arbitration clause. During the life of the contract in question, the non-signatory Defendants have embraced the Agreement containing the arbitration clause for their benefit, but now, attempt to repudiate the arbitration clause. *See Hellenic Investment Fund, Inc.*, 464 F.3d at 517-18. The purported breach of this Agreement is the basis of at least some, if not all, of the claims that all Defendants have asserted against Green Tree in the State Court Action. *See* State Ct. Compl, at p. 15, attached as Ex. "1" to Suppl. to Mot.

Defendants cite *Southern Energy Homes, Inc. v. Godwin*, 183 Fed. Appx. 441, 2006 WL 1582646 (5th Cir. May 31, 2006), for the proposition that estoppel does not

7

apply to a non-signatory.  As the Fifth Circuit noted in that opinion, however, "[i]n agreement with several other circuits, our court has held equitable estoppel may be used to compel non-signatories to arbitrate."  *Southern Energy Homes*, 183 Fed. Appx. at 444, 2006 WL 1582646, at *2 (*citing Wash. Mut. Fin. Group, L.L.C.,* 364 F.3d at 267).  Nevertheless, the Court in *Southern Energy Homes* affirmed the denial of summary judgment on the arbitration claim because there was *no signatory* to the arbitration provision.  *See id.*  Such is clearly not the case here, where Stephens was a signatory.

      2.     <u>Compelling Arbitration of Warranty Claims</u>

Defendants also contend that the warranty claims asserted in the State Court Action bring this matter within the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*, such that the Motion to Compel Arbitration should be denied.  *See* Resp. to Suppl. to Mot., at p. 4.  Warranty claims covered by the Magnuson-Moss Warranty Act are nevertheless subject to arbitration.  *See Walton v. Rose Mobile Home LLC*, 298 F.3d 470, 478-79 (5th Cir. 2002) (holding that the Magnuson-Moss Warranty Act "does not preclude binding arbitration of claims pursuant to a valid binding arbitration agreement, which the courts must enforce pursuant to the FAA.").

      3.     <u>Other Contractual Defenses</u>

Defendants maintain that there was no consideration for the arbitration provision, that it was unconscionable, that it was a contract of adhesion, and that it is void under the statute of frauds.  *See* Resp. to Suppl. to Mot., at pp. 4-6. Principles of state contract law govern the question of whether the parties formed a

valid agreement to arbitrate.  *See Washington Mut. Fin. v. Bailey,* 364 F.3d 260, 264 (5th Cir. 2004).  Each of these defenses is discussed in turn.

   a. Was There Consideration?

In any contract, "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor [sic] or a detriment to the promisee.  If either of these requirements exist, there is a sufficient consideration."  *Theobald v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999).  Here, in exchange for financing the mobile home in question, Stephens promised to pay back the loan with interest.  Both parties to the Agreement undertook duties towards one another.  There is clearly sufficient consideration to support the Agreement.

   b. Was the Agreement Unconscionable?

Defendants contend that the arbitration provision is procedurally and substantively unconscionable and that the Agreement was a contract of adhesion. *See* Resp., at p. 6.  The Mississippi Supreme Court defines "contracts of adhesion" as contracts that are "drafted unilaterally by the dominant party and then presented on a 'take it or leave it' basis to the weaker party who has no real opportunity to bargain about its terms.  Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print."  *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002) (internal quotation omitted).  A contract of adhesion is not unconscionable *per se.  See Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 513 (Miss. 2005).

A party seeking to avoid a contract must show that the contract is unconscionable. *See id.*, at p. 518. Unconscionability is defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *East Ford, Inc.*, 826 So. 2d at 715. There are two types of unconscionability: procedural and substantive.

Procedural unconscionability exists when there is "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id*. at 714. In this case, the arbitration provision appears on page five (5) of the six (6) page Agreement. It was easily identifiable as it followed a clearly marked heading printed in all capital letters and bold-faced type, clearly indicating that this section pertained to "**ARBITRATION OF DISPUTES**." The provision itself was printed in type of equal size to the print contained in the rest of the document. Appearing above the signature line on the last page of the Agreement was an all-capital letters, bold-faced consent paragraph drawing special attention to the arbitration provision. *See* Agreement, at p. 5, attached as Ex. "2" to Mot. There is insufficient evidence of a lack of knowledge or voluntariness on the part of the weaker party to support a procedural unconscionability claim. Instead, the parties were "competent individuals signing a well-marked, highly visible agreement which indicated very clearly that dispute resolution would be accomplished by way of arbitration." *See Stephens*, 911 So. 2d at 517.

Substantive unconscionability exists when the arbitration agreement is found to be oppressive. *See East Ford*, 826 So. 2d at 714. "Substantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Stephens*, 911 So. 2d at 521. "When reviewing a contract for substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, contracting parties." *Id.* "For a *per se* finding of unconscionability, the Court must find the contract at issue 'by its very language significantly alters the legal rights of the parties involved and severely abridges the damages which they may obtain.'" *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732, 738 (Miss. 2007) (*quoting Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005)).

In this case, the arbitration provision does restrict any award of damages by the arbitrator to actual and direct damages, and by its terms, both parties expressly waive any right to consequential, punitive, or treble damages. *See* Agreement, at p. 5, attached as Ex. "2" to Mot. Federal courts have held that provisions in arbitration agreements prohibiting punitive damages are generally enforceable. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56-57 (1995) (finding that parties may voluntarily elect, in the agreement to arbitrate, to waive a punitive damage award); *New South Federal Sav. Bank v. Anding*, 414 F. Supp. 2d 636, 650 (S.D. Miss. 2005) (holding that prohibition of state common law punitive

11

damages in arbitration agreement, which stated that "the arbitrator(s) may not award punitive damages, treble damages, penalties or attorney fees...," was enforceable) (*citing Investment Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 316-18 (5th Cir. 2002)).  Because the provision restricts both parties to the Agreement, the Court does not find this condition, or any others in the arbitration provision, to be substantively unconscionable.

        c.       Is the Agreement Void under the Statute of Frauds?

The Court first notes that a statute of frauds defense must be pleaded affirmatively.  No such affirmative defense was pled in Defendants' Answer to the Complaint in this case.  In addition, at its core, this argument is essentially an attempt by Defendants to reassert their non-signatory defense, which the Court has already rejected in Section II(A)(1)(b), through the use of Mississippi's statute of frauds.  *See* Resp. to Mot., at p. 4 (*citing* Miss. Code § 15-3-1).  Even assuming this statute applies to the Agreement in question, the Agreement was "in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing."  Miss. Code § 15-3-1.  Therefore, no statute of frauds defense can succeed.

**B.    Does the Dispute in Question Fall within the Scope of the Arbitration Provision?**

There is a strong presumption in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Vicksburg Partners*, 911 So. 2d at 513-14; *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054

(Miss. 2004). Accordingly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *see also First Family Fin'l Servs., Inc. v. Fairley*, 173 F. Supp. 2d 565, 569 (S.D. Miss. 2001) (*citing Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000)). Indeed, the Fifth Circuit has stated that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 335 (5th Cir. 1987).

> In this case, the arbitration provision covers
>
> any and all: (1) disputes, torts, counterclaims, or any other matter in question between you and I arising out of, in connection with, or in any way relating to this Agreement ("Claims") (including whether Claim must be arbitrated) and (2) any Claims arising out of, in connection with, or relating to a transaction involving you and one or more third parties who have not signed this Agreement which a third party elects to arbitrate ("Third Party Claims").

*See* Agreement, at p. 5, attached as Ex. 2 to Mot.

This type of language is interpreted broadly. "The Mississippi Supreme Court has noted that broad terms defining the scope of an arbitration agreement such as 'any controversy' are 'broad sweeping' and expansive enough to include most claims related to the contract in question." *New South Fed'l Savings Bank v. Anding*, 414 F. Supp. 2d 636, 651 (S.D. Miss. 2005) (*citing Smith Barney, Inc. v. Henry*, 772 So. 2d 722, 725-26 (Miss. 2001)).

The contract in this case contains both narrow language, "arising out of," and broad language, "in connection with" and "relating to."  "[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998).  The Fifth Circuit has held that arbitration clauses containing the language "relate to" or "are connected with" are broad clauses that "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

Defendants' claims against Green Tree in the State Court Action are based on breach of contract and warranty, which arise out of the Agreement containing the arbitration provision.  The remaining claims relate to the purchase transaction and the Agreement.  Accordingly, the Court concludes that Green Tree is entitled to enforce the arbitration clause.  An order compelling arbitration should issue in this case.  *See Heinhuis v. Venture Assoc., Inc.*, 959 F.2d 551, 554 (5th Cir. 1992).

C.  **Are There Any Legal Constraints External to the Agreement which Foreclose Arbitration?**

Other than the contractual and other defenses asserted by Defendants, which the Court has previously considered and rejected elsewhere herein, the Court finds no legal constraints external to the Agreement which foreclose arbitration. Arbitration of Defendants' claims against Green Tree is therefore appropriate.

### III.  CONCLUSION

After considering the record, the parties' submissions, and evidence on file, as well as the applicable law, and for the reasons more fully stated herein, the Court finds that Green Tree's Motion to Compel Arbitration must be granted.  Because "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration," the court finds that the instant case should be dismissed with prejudice rather than stayed.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

The Court has also reviewed and considered Defendants' Response in Opposition [19-1] to Green Tree's Supplement to Motion to Compel Arbitration [18-1], and Green Tree's Motion to Partially Strike the Response [20-1].  Because the Court has considered the arguments asserted by Defendants in the Response to the Supplement and finds that they do not preclude arbitration of Defendants' claims, the Court finds that Green Tree's Motion to Partially Strike should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, Green Tree's Motion to Compel Arbitration in this action [11-1] should be and is hereby **GRANTED**, and the parties in this action are to submit the disputed matter to arbitration.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, for the reasons cited herein, Green Tree's Motion to Partially Strike filed on April 22, 2008 [20-1] should be and is hereby **DENIED**.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, for the reasons

cited herein, this case is hereby **DISMISSED WITH PREJUDICE** and any remaining pending motions are hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 29th day of April, 2008.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE